53 CCPA

**Application of Chester R. AUSTIN, John Marshall Bertram, Edward J. Prince and Joseph K. Stone, Jr.**

**Patent Appeal No. 7617.**

United States Court of Customs and Patent Appeals.

May 19, 1966.

James E. Toomey, Bruno J. Verbeck, Chicago, Ill. (Harold L. Jenkins, Washington, D. C., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting C. J., MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This appeal is from a decision of the Board of Appeals affirming the rejection of claims 7, 8, 9 and 11 of appellants' application [1] entitled "Method of Producing Steel," as unpatentable over certain prior art. No claim is allowed.

The invention is directed to a process for the conversion of iron to steel. An open-topped converter is charged with solid ferrous metal and solid carbonaceous fuel, after which a lance is inserted downwardly from the top of the converter so as to discharge oxygen against the surface of the charge. A portion of the charge is then heated to initiate burning upon contact with the oxygen. The oxygen discharge is continued until the ferrous metal is converted to steel.

The only independent claim, claim 11, reads as follows:

11. The method of converting solid ferrous metal to steel in an open topped conversion vessel which com-

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 90,206, filed February 20, 1961.

prises placing solid carbonaceous fuel in the bottom of said vessel, placing solid ferrous metal on top of said carbonaceous fuel, raising the temperature of at least some of said fuel to its ignition temperature, blowing oxygen downwardly against the charge in said vessel to impinge against said carbonaceous fuel, and continuing to blow oxygen against said charge until said solid ferrous metal is melted and converted to steel.

Claim 7 adds to claim 11 the requirement that "said portion of said solid ferrous metal and said carbonaceous material are in the form of at least one member consisting essentially of compressed iron powder and finely divided coke." Claim 8 states that the carbonaceous material of claim 11 is coke and claim 9 that the carbonaceous material "is added in an amount of from about 2% to about 35% by weight of said solid ferrous metal."

The appeal raises the question whether the claims in issue define obvious variations of the following prior art:

Bessemer                  51,401     December 5, 1865
Suess et al. (Suess)    2,800,631        July 23, 1957

Bessemer discloses a steel making process which is said to economize the fuel used and lessen the wear and tear on furnace linings. That is accomplished:

\* \* \* by employing the converting vessel as a heating or melting vessel, wherein the metal to be converted may be highly heated while in the solid state or be wholly or in part melted therein, and be, without removal from the vessel, at once converted into malleable iron or steel. \* \* \*

In Bessemer's process, fuel is placed in the bottom of an open-topped conversion vessel and ignited. Solid ferrous metal such as pig iron is then placed on top of the fuel and an air blast forced upwardly through the charge to develop high heat in the metal. Upon melting of the metal, the vessel, which is open near its top, is tilted; molten ferrous metal is added; and preferably any remaining fuel is raked out of the vessel. Then the vessel is returned to vertical position and the air blast continued until the conversion of the metal is completed.

Suess discloses a process adapted to refining hot metal charges, for example, molten pig iron, but "also applicable to the production of refined metals from solid charges, such as pig iron for the production of steel \* \* \*." It further states:

\* \* \* The invention is also characterized by the fact that the heat required for the refining of the molten impure metal is autogenous, being produced primarily by reaction of the oxygen gas with the impurities in the molten metal, although when utilizing solid charges of impure metal, the heat required for melting of the charge prior to refining is provided by combustion of a suitable fuel with the oxygen gas.

The process is disclosed as involving use of a high purity oxygen jet from a lance impinging on the central portion of the charge vertically from directly above.

The claims stand rejected as unpatentable over Bessemer in view of Suess, over Suess in view of Bessemer, and over Suess alone.

In connection with the rejection on Bessemer in combination with Suess, the board agreed with the examiner that, in view of Suess, it would be obvious to blow the oxidizing gas in the Bessemer process downwardly into the converter instead of upwardly through it.

Appellants contend that there is no suggestion in either Suess or Bessemer for making that modification of Bessemer. They further urge:

But even assuming, arguendo, that it would have been obvious to blow air downwardly into the converter instead of upwardly through the converter, this would not result in the Appellants' process which is defined in the claims. The *concept* of the Appellants' invention as defined in these claims, is absent both in Bessemer and Suess et al. Blowing the air used in the Bessemer process downwardly into a converter does not meet the requirements in

the claims that *oxygen* be blown downwardly against a solid charge of ferrous metal placed on top of fuel so as to impinge against the fuel. Furthermore, the Bessemer process, as recognized by the Board * * * includes the step of adding molten iron at the completion of the preheating stage. This step is not called for, or specified, in the claims on appeal. Furthermore, the Bessemer procedure involves the mechanical removal of fuel from the charge prior to refining. This step of Bessemer's is not included or called for in the claims on appeal.

However, we think Suess would clearly suggest that the oxidizing jet be blown downwardly into the charge in Bessemer. Thus Suess, in pointing out difficulties which arise from blowing high purity oxygen upwardly from the bottom of the converter in the prior art, states:

> Processes for the utilization of high purity oxygen in the refining of molten metal charges, such as pig iron, have been suggested ever since the development of the original pneumatic process by Bessemer. Attempts to blow with high purity oxygen in a conventional Bessemer or Thomas converter through bottom tuyeres has resulted in the destruction of the refractory bottom within the short time of one heat. On the other hand, high purity oxygen refining processes have been previously proposed in which the oxygen is directed onto the molten metal bath surface in the form of a jet or jets issuing from tuyeres positioned in the wall of the refining vessel above the melt line. In such processes, the horizontal velocity component of the oxygen jet at the melt surface causes the development of excessively high temperatures above and at the melt-slag interface on the side of the vessel opposite the tuyeres or oxygen jet inlet so that a rapid deterioration of refractory occurs. * * *

Suess then discloses that those difficulties can be avoided by use of an oxygen jet impinging vertically downwardly on the central portion of the molten charge.

As noted above, Suess, like Bessemer, contemplates the use of solid starting materials. Its specific disclosure of that feature reads:

> The process of the present invention may be also applied to the production of metals, for example, production of steel, from solid starting materials. In the production of steel, pig iron and scrap iron, and if desired certain alloys and fuels, such as coal or wood, are introduced into the refining vessel. As materials for producing heat for melting, coke, ferrosilicon, calcium carbide, aluminum alloys and the like, which are converted into slag or gaseous products at the prevailing refining temperatures can be added. The total amount of the starting material mixture may be introduced as a single charge prior to initiation of the melting, or may be gradually fed in small incremental amounts. Sufficient fuel should be present for producing the combustion necessary to provide the heat of fusion of the solid charge. After ignition of the fuel, melting of the initial mixture is brought about by the action of the oxygen jet.

> The melting procedure is started by means of an ignited body which is introduced immediately prior to the initiation of blowing of the oxygen jet, and is preferably positioned at that portion of the solid charge where the oxygen jet comes in direct contact therewith.

> Thus, according to the present invention, a steel may be produced with a minimum consumption of fuel, for foundries or rolling mills, by melting the iron to be converted into steel with low grade fuel and a high purity oxygen jet blast, for example, in cupola furnace, or in a converter type vessel itself, and subjecting the thus melted solid charge to high purity oxygen refining in the above described manner in a suitable refining vessel, such as a converter. * * *

While Suess does not disclose the particular positioning of his solid charge materials, simply stating that the starting

material mixture may be introduced as a single charge or gradually fed in small increments, it seems clear that one skilled in the art would find it obvious to retain Bessemer's disclosed arrangement of solid ferrous metal overlying the fuel when following Suess' teaching of reversing the direction of application of the oxidizing blast.[2]

Since what Suess teaches the art is that an oxygen jet can be used successfully in open-topped converters such as Bessemer's if it is directed downwardly on the charge instead of upwardly through it, it is obvious from that disclosure to use a jet of oxygen in the modified Bessemer process in place of air.

It is true that, as appellants argue, Bessemer discloses the step of adding molten iron at the completion of the preheating stage and that such step "is not called for, or specified in the claims on appeal." However, as pointed out by the examiner and the board, and not controverted by appellants, the appealed claims do not include any limitation that excludes that step. Likewise, the fact that Bessemer also prefers to remove unconsumed fuel prior to refining is not material to the patentability of the claims since they do not preclude that step either.

In summary, Suess suggests the use of a downwardly directed jet of oxygen in the well known Bessemer process and describes the use of solid metal charges. It is apparent that following that suggestion of Suess in connection with the specific disclosure in Bessemer that the solid metal charge is placed on top of the solid fuel will result in the downwardy blown oxygen going through the solid metal to the fuel below. That is exactly what also occurs in the process claimed by appellants and is what appel-

lants say in their brief is the "concept" of their invention.

The board also held the claims unpatentable over Suess in view of Bessemer, stating that it found "nothing unobvious in placing the fuel on the bottom of the converter since such is shown by Bessemer."

We agree with the board that it would be obvious to place the fuel in the bottom of Suess' open-topped converter. The very fact, urged by appellants, that Suess does not describe the manner of distributing fuel when a solid charge of iron is used, would lead the person skilled in the art to consider and, in the absence of any indication of inoperability, adopt the arrangement of the fuel beneath the solid metal disclosed by Bessemer in connection with conversion to steel in a similar converter. Indeed, it would appear that such arrangement would be an obvious matter of choice even in the absence of Bessemer's specific teaching. Thus, locating the metal on top of the fuel is one of but four obvious alternatives, the other three being (1) fuel on top and solid metal beneath, (2) solid metal and fuel mixed, and (3) an arrangement of layers of the components.

For the foregoing reasons, we find no error in the board's conclusion that the subject matter defined in claim 11 is obvious over the combination of the Bessemer and Suess patents, either taken in view of the other. Hence it is unnecessary to consider the rejection on Suess alone.

As to claims 7, 8 and 9, appellants' position is that neither reference discloses the use of a compressed iron powder and finely divided coke or the percentages of carbonaceous materials called for in claim 9, "nor was the process con-

---

2. Appellants' own disclosure regarding the placement of the solid metal and fuel states:

The carbonaceous fuel may be added to the converter in various ways, it being important as set out above that the fuel be located in such manner that substantially all of it, i. e., the effective part, is disposed below the surface of the ferrous

charge. For example, the fuel may be added directly to the bottom of the converter after which the solid metal is added. Alternatively, the fuel and solid metal can be mixed together and then added. Also, if desired, the fuel and solid metal can be arranged in alternate layers, with the uppermost or top layer being solid metal.

taining these limitations obvious." We think that argument is adequately answered by the solicitor, who points out that use of coke, as specified in claim 8, is taught by both references and further urges:

> * * * Whether the coke is in finely divided form and the iron is in the form of compressed powder, as set forth in claim 7, is believed to be merely a matter of obvious choice between well known forms of such substances. In the absence of evidence of some unobvious aspect of their selection, use of those substances would seem to add nothing of patentable significance to claim 11. The selection of the proportions of metal and fuel, such as the range specified in claim 9, would, in the absence of evidence to the contrary, appear to require no more than routine investigation by those normally skilled in the art.

The decision is affirmed.

Affirmed.

SMITH, Judge (concurring in result).

The rejection here is based on 35 U.S.C. § 103. Appellants argue that the appealed claims cover an unobvious process in that they call for "placing solid carbonaceous fuel in the bottom of said vessel, [and] placing ferrous metal on top of said carbonaceous fuel." Appellants argue:

> * * * It is essential in Appellants' process that the oxygen which is blown downwardly against the charge *impinge* against the carbonaceous fuel which has been placed in the bottom of the vessel, and covered over with solid ferrous metal. In Suess the carbonaceous fuel is *not* placed on the bottom of the vessel and is *not* overlayered with solid ferrous material.

Suess discloses essentially the same process utilizing solid starting materials and fuel against which oxygen is blown downwardly in the melting process. The solid starting materials and the fuel in the Suess process are "introduced into the refining vessel." Also the fuels "can be added." Suess also discloses that "the starting material mixture may be introduced as a single charge prior to initiation of the melting, or may be gradually fed in small incremental amounts."

The Suess reference does not disclose the precise spatial relationship between the starting material and the fuel as defined in the appealed claims. This appears to be the sole difference between appellants' claimed method and the Suess method. Despite this difference, Suess fairly discloses mixing the fuel and the starting material as taught in appellants' specification.

As appellants' specification does not disclose that the precise spatial relationship claimed between fuel and starting material is other than optional, it seems to me the appealed claims cover subject matter which one of ordinary skill in the art would find to be obvious in view of Suess alone under 35 U.S.C. § 103.